# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

|  |  |  |
|---|---|---|
| **LEROY A. LOVELACE**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:07CV00506 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **KATHLEEN BASSETT, ET AL.**, | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

*Leroy A. Lovelace, Plaintiff Pro Se; Mark R. Davis, Senior Assistant Attorney General of Virginia, Richmond, Virginia, for Defendants.*

In this civil rights action, a Virginia prison inmate asserts that being served one-third fewer calories per day during the month-long Ramadan period substantially burdened the exercise of his Islamic faith. I find that the inmate has pleaded a sufficient claim to allow the case to proceed and that the defendants' Motion to Dismiss must be denied.[1]

---

[1] The plaintiff, Leroy A. Lovelace, filed an earlier case in this court complaining that he had been removed from the Ramadan meal list at the prison because a guard falsely reported that he had broken his fast by taking a lunch meal during the day. Summary judgment was granted to the defendants, but the Fourth Circuit reversed and remanded for further proceedings. *Lovelace v. Lee*, 472 F.3d 174, 204 (4th Cir. 2006). On remand, summary judgment was granted to the defendant warden and the claim against the guard was settled before trial. Lovelace attempted to raise the present claim in that case, but his requested amendment was directed to be filed as this new action. *Lovelace v. Lee*, No. 7:03CV00395, 2007 WL 3069660, at *1 (W.D. Va. Oct. 21, 2007). The defendants in this case are the present warden, Kathleen Bassett; Mike Oslin, the food service director for the prison; and Larry Huffman, a regional director for the prison system. Lovelace seeks money damages and injunctive relief.

I

In addressing the Motion to Dismiss, I must accept that the plaintiff will be able to prove his allegations, which I therefore accept as true for the present purposes. He alleges as follows.

Lovelace, an inmate at the Virginia Department of Corrections ("VDOC") prison known as Keen Mountain Correctional Center ("KMCC"), practices the Islamic religion. In 2001, he was granted acceptance into the so-called Common Fare religious diet program. This diet ("CFD") is designed to meet the needs of inmates who cannot comply with their religious dietary requirements by merely choosing items from the master menu. The CFD, based on a fourteen-day cycle of three meals per day, is certified to meet or exceed minimum daily nutritional requirements.

Ramadan is the ninth month of the Islamic lunar calendar, when Muslims must fast during daylight hours for thirty consecutive days. The faith does not, however, limit food consumption between sunset and dawn. In the years 2001, 2002, 2003, and 2004, before the Ramadan fast began, Lovelace met with Mike Oslin, the KMCC food service director, seeking permission for Ramadan participants to receive their pre-packaged CFD lunch meals after sundown, along with their supper meals. According to Lovelace, the daily allotment of three CFD meals provides each inmate approximately 2500 calories; lunch is the largest of the three meals, supplying 1000 of the total calories for the day. Each year Oslin refused Lovelace's request and

provided Ramadan participants only with the breakfast meal before sunrise and the supper meal after sunset.

Again in 2005, Lovelace asked Oslin to serve the lunch and supper meals after sundown during Ramadan, and Oslin refused. Each day during Ramadan 2005, Lovelace and the other participants received their breakfast meal before sunrise and their supper meal after sunset, but did not receive their lunch meal at all. Once the fast began, Lovelace raised the issue through all levels of the administrative remedies procedures. He asked to receive all three CFD meals or to have the breakfast or supper CFD meals supplemented with additional calories to bring the total up to the normal requirement. At each level of the grievance procedures, his requests were denied.

As a result of ingesting fewer calories every day for thirty days during Ramadan, Lovelace lost ten pounds, suffered "hunger headaches" and had trouble sleeping. His spiritual experience also suffered because his hunger distracted him from his reading and praying, as did the "contentious exchanges" with staff about the CFD meals during a time when Muslims are to seek peace and avoid arguments and disputes.

II

When "considering a motion to dismiss, the court should accept as true all well-pleaded allegations" and construe those allegations in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The complaint must allege "enough facts to state a claim to relief that is plausible on its face" and not merely "conceivable." *Id.* at 1974.

A. RELIGIOUS EXERCISE.

A prisoner has a clearly established right under both the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.A. §§ 2000cc to 2000cc-5 (West 2003), to receive a diet consistent with his sincerely held religious scruples. *Lovelace v. Lee*, 472 F.3d at 198. Furthermore, inmates are entitled to receive adequate nutrition and calories. *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985). In deference to the expertise of prison administrators in managing the difficult challenges of incarceration, however, a prison policy that substantially burdens an inmate's ability to practice his religious beliefs withstands a First Amendment challenge so long as it is rationally related to

a legitimate governmental interest. *Turner v. Safley*, 482 U.S. 78, 89-81 (1987).[2] A "substantial burden" is one that puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981).

RLUIPA prohibits governments from taking actions that impose a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that imposition of that burden furthers "a compelling governmental interest" by "the least restrictive means." 42 U.S.C.A. § 2000cc-1(a)(1)-(2). Its protections apply to programs or activities that receive federal monies, as does the VDOC. 42 U.S.C. § 2000cc-1(b)(1). Under RLUIPA, the inmate plaintiff bears the burden of proving that the challenged prison practice or lack of religious accommodation places a substantial burden on his exercise of sincere, religious beliefs. 42 U.S.C.A. § 2000cc-2(b). Once plaintiff carries this burden, the government must prove that the imposition of the burden (or refusal to accommodate plaintiff's belief) furthers a compelling interest by the least restrictive means. *Id.* RLUIPA does not define "substantial burden." The Fourth Circuit has adopted the

---

[2] Under *Turner*, the court must consider four factors in addressing an inmate's constitutional claim: (1) whether there is a "valid, rational connection" between the regulation and a legitimate and neutral governmental interest; (b) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates; (c) whether the extent to which accommodation of the asserted right will have an impact on prison staff, on inmates' liberty and on the allocation of limited prison resources; and (d) whether the regulation represents an "exaggerated response" to prison concerns. *Id.* at 89-91.

*Thomas* definition of the term. *Lovelace*, 472 F.3d at 187 ("a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'") (quoting *Thomas*, 450 U.S. at 718).

The defendants assert that Lovelace fails to show how missing his lunch every day for a month put substantial pressure on him to modify his behavior in violation of his beliefs. They contend that the reduced caloric intake for a brief period is not a substantial burden, that there is no allegation that prison officials followed the two-meal system during Ramadan out of any effort to influence Muslim inmates in their decision to participate in the religious exercise or not, and that Lovelace does not suggest that knowing he would receive only two meals per day during Ramadan 2005 constituted "substantial pressure" on him to forego celebration of the Ramadan fast. Thus, they argue that he fails to allege facts stating a claim that the two-meal Ramadan accommodation violated his rights under the First Amendment or RLUIPA.

I disagree. Lovelace alleges suffering adverse effects to his personal well being and to his religious experience resulting from the month-long period of caloric deprivation under the two-meal program. He also demonstrates that reduced caloric intake and resultant hunger are not required elements of the Ramadan fasting practice, which does not restrict the amount of food adherents may consume between sunset and sunrise. Liberally construing his pro se submissions, I find the adverse effects

Lovelace allegedly suffered from this program to be sufficient to state a claim that the two-meal Ramadan program imposed a "substantial burden" on his religious exercise under both the First Amendment and RLUIPA standards. *See Couch v. Jabe*, 479 F. Supp. 2d 569, 589 (W.D. Va. 2006) (holding that "a reasonable jury could find that inmates participating in the [Ramadan] fast [in 2004], receiving only 1000 daily calories, were substantially pressured to break the fast, in violation of Islamic tenets, in order to satisfy their physical hunger"). Therefore, I will deny the Motion to Dismiss as to Lovelace's claims under the First Amendment and RLUIPA.

B. DUE PROCESS.

Lovelace also asserts that KMCC's two-meal Ramadan program deprived him of a liberty interest without due process.[3] To succeed on a procedural due process claim, he must show that:

> he was denied a liberty interest protected by the Due Process Clause, an interest that can arise either from the Constitution itself or from state laws or policies [and that] this denial imposed on him an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," [and that] the process that the state prison employed was constitutionally inadequate.

*Lovelace*, 472 F.3d at 202 (citations omitted).

---

[3] Although Lovelace argues that the program implicated his substantive due process rights, he fails to explain how any such rights would not be merely cumulative of the protections offered him under the Free Exercise Clause.

- 7 -

The defendants do not deny that Lovelace had a liberty interest, derived from the Constitution itself, in participating in the Ramadan fast. They argue that the prison grievance procedures provided Lovelace with a pre-deprivation process by which to challenge the Ramadan meal procedures. Lovelace counters that the grievance procedures allow complaints only as to problems that have already occurred; they do not apply to problems an inmate suspects he will have. Specifically, Lovelace asserts that since the two-meal system of accommodating Ramadan participants in 2005 was not expressly publicized before the fast began, he could not begin exercising the grievance procedures until after the first day of the fast and could not have exhausted all levels of the procedures before Ramadan ended. The defendants also point to Lovelace's yearly discussions with the food service director as a form of process. It is hardly a meaningful procedural protection for Lovelace to "have the ear" of a prison official who claims to have no authority to change the practice about which Lovelace is complaining.[4] As Lovelace has alleged facts indicating that he had no meaningful procedure by which to challenge the deprivation of calories before or while it occurred during Ramadan 2005, I must deny the Motion to Dismiss as to Lovelace's procedural due process challenge.

---

[4] An attachment to the Amended Complaint indicates that the two-meal program for Ramadan derives from "DOP [Division Operating Procedure] 601, Chapter 4 section XII," and that "KMCC is not authorized to change the Master Menu at the institutional level." (Am. Compl. Ex., Level 1 Grievance Response, Log No. 260-09429, 11-5-05.)

## C. EQUAL PROTECTION.

The Equal Protection Clause prohibits governmental decision makers from treating differently persons who are in all relevant respects alike. *City of Cleburne v. Cleburne Living Ctr. Inc.*, 473 U.S. 432, 440 (1985); *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). An inmate claiming violation of this right must first demonstrate that he has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison*, 239 F.3d at 654.

> Because "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform," . . . the Supreme Court has held a "prison regulation [that] impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests" and not an exaggerated response to a particular concern.

*Id.* at 654-55 (quoting *Turner*, 482 U.S. at 84, 89).

Lovelace bases his equal protection challenge on the prison policy for feeding inmates only two times per day during weekends and holidays. Under this policy, officials supplement the calories of the breakfast meal so that inmates receive the same number of calories as they would in three meals on ordinary days. On weekends and holidays, Lovelace allegedly receives all three of his CFD meals. Lovelace apparently argues that as KMCC officials are willing to supplement inmates' calories when serving two meals per day for their own convenience and benefit on holidays and weekends, their enforcement of the two-meal program during Ramadan arises out

- 9 -

Case 7:07-cv-00506-JPJ-mfu   Document 17   Filed 09/27/08   Page 9 of 11   Pageid#: 112

of purposeful discrimination against those of the Islamic faith. The defendants make no argument regarding Lovelace's assertion of an equal protection violation.

Liberally construing Lovelace's pro se pleadings, I find that his allegations of an equal protection violation here are sufficient to withstand the Motion to Dismiss. It is plausible that officials implemented the two-meal system out of their mistaken belief that the Islamic faith's call for fasting during Ramadan included a reduction in calories. Such thinking could constitute purposeful discrimination, and officials have not provided any rational basis for the practice. Accordingly, I will deny the Motion to Dismiss as to Lovelace's equal protection challenge.[5]

---

[5] Lovelace seeks injunctive relief ordering the defendants to revise the procedure to insures that all participants receive meals between sunset and dawn that are nutritionally and calorically equivalent to the three meals provided to the non-fasting prisoners each day at the regular times. (Am. Compl. at 12.) Lovelace indicates, however, that after the first day of Ramadan 2006, he and other participants received approximately 2500 calories per day, pursuant to a court order in *Couch v. Jabe*, Case No. 7:05CV00642 (W.D. Va.). Pursuant to a settlement agreement later reached in that case in March 2007, Ramadan participants that year received 3000 calories each day. He quotes the settlement agreement as stating that "VDOC Employees agree that the total calories and nutrition provided in the meals to [fasting] inmates will equal or exceed that provided to non-fasting inmates during the same period." (P. Resp. at 7 n. 1). If the VDOC has implemented the language of the settlement agreement as quoted by Lovelace, his request for injunctive relief may be moot. The defendants do not offer any evidence of mootness, however, or move for dismissal of the claim for injunctive relief and accordingly, I will not address this aspect of the case at this time.

## III

For the reasons stated, it is **ORDERED** as follows:

1. The defendants' Motion to Dismiss is DENIED; and

2. The defendants must file an answer and any further dispositive motions within thirty (30) days from entry of this Order.

ENTER: September 27, 2008

/s/ JAMES P. JONES
Chief United States District Judge